## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**SAM STERLING ALFORD,**

      **Petitioner,**

**v.**                               **Case No. 5:17cv144-MCR/CAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On May 18, 2017, Petitioner, Sam Sterling Alford, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  Respondent filed an answer on February 1, 2018.  ECF No. 15.  Petitioner filed a reply on April 4, 2018.  ECF No. 19.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Amended Information filed in the Fourteenth Judicial Circuit in and for Calhoun County, Florida on May 5, 2008, in case number 2007-192 with one count of sexual battery occurring between August 1996 and December 1997, and one count of lewd or lascivious touching occurring between August 2000 and August 2001, on E.F., a child less than twelve years of age, by a person age eighteen or older.  Ex. B at 215.[1]

In a separate Second Amended Information in case number 2007-191, Petitioner was charged on May 27, 2008, with three counts of capital sexual battery on D.F., a child less than twelve years of age, by a person age eighteen or older, occurring between December 1993 and December 1994, August 1998 and June 1999, and August 2000 and August 2001; and two counts of lewd or lascivious touching of D.F. between December 1993 and October 1995, and between April 2005 and October 3, 2005.  Ex. B at 403-04.

---

[1] Hereinafter, citations to the State court record, "Ex. –," refer to exhibits A through JJJ submitted in conjunction with Respondent's answer.  *See* ECF No. 16.

The cases were consolidated for jury trial, which was held on June 19-20, 2008. At trial, the victims' mother testified that she had been in a relationship with Petitioner for a number of years, during which he sometimes lived with her and her daughters and sometimes lived in separate housing, but babysat for her daughters on occasion. In sum, D.F. testified that when she was three or four, she woke with Petitioner putting his mouth on her vagina. Not long after that, he put his hand on her genitals and touched her chest. When she was in third grade, Petitioner came into her room and put his finger in her vagina. When she was age 10 or 11, Petitioner lived in a trailer where she sometimes stayed when he babysat her and her sister. D.F. testified that while there, she woke up once with his penis on her mouth. She testified that when she was 14 or 15, and Petitioner was no longer living with them, he put his hand in her underwear, or tried to, and touched her chest, but she fought him and he stopped. D.F.'s younger sister, E.F., testified that when she was around 4 or 5 years old, which would have been in 1996 or 1997, Petitioner came into her room when she was in bed and put his finger in her vagina. She testified that when she was 8 or 9, in third grade, Petitioner put his hand on her vagina when she was in bed.

Petitioner was found guilty as charged.  Ex. C at 468-69, 470.  In case number 2007-191, Petitioner was sentenced to life in prison for counts 1, 3, and 4; 34.8 months in prison for count 2; and 124.3 months in prison for count 5, all to be served concurrently.  Ex. C at 490-94.  In case number 2007-192, Petitioner was sentenced to life in prison for count 1 and 124.3 months in prison on Count 2, to be served concurrently with sentenced imposed in 2007-191.  Ex. C at 495-96.

Petitioner appealed to the State First District Court of Appeal, raising two claims: (1) fundamental error occurred in prosecutor's closing argument and (2) Petitioner was convicted and sentenced under a statutory subsection that did not exist at the time of the crime.  Ex. O.  The appellate court affirmed per curiam without discussion on February 17, 2011, and issued the mandate on March 7, 2011.  Ex. R.  Alford v. State, 54 So. 3d 490 (Fla. 1st DCA 2011) (table).

On March 22, 2012, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[2]  Ex. U at 504.

_____

[2] The claims raised in the Rule 3.850 motion were: (1) Ineffective assistance of counsel (IAC) in failing to object to consolidation; (2) IAC in failing to request jury instruction on use of Williams Rule evidence; (3) IAC in failing to present testimony of witnesses Pelt and Hires; (4) IAC in failing to adequately prepare for trial by obtaining telephone records of prior girlfriend and properly evaluating letters from her; (5) IAC in failing to properly argue motion for judgment of acquittal on count 2; (6) IAC in failing to object to a witness's use of documents while testifying; (7) IAC in failing to object to

Pursuant to court order, Petitioner filed an amended ground three. Ex. U at 528, 529. On January 28, 2013, the post-conviction court entered an order denying, in part, claims one through seven, but ordering a limited evidentiary hearing as to claims three and four—failing to call Cherie Hires to testify at trial and failing to offer into evidence two handwritten letters from Dana Dunn, Petitioner's former girlfriend and mother of the two child victims. Ex. U at 543-49. The evidentiary hearing was held on November 18, 2013. Ex. OO. The post-conviction claims were denied by order issued December 10, 2013. Ex. X at 1004-14.

Petitioner appealed to the district court of appeal.[3] Ex. PP. The appellate court issued an opinion affirming all but the claim that trial counsel was ineffective for moving to consolidate the cases. That claim was reversed for an evidentiary hearing. Ex. RR. <u>Alford v. State</u>, 166 So. 3d 219 (Fla. 1st DCA 2015).

---

testimony that both counsel agreed would not be admitted; and (8) cumulative error. Ex. U at 504-27.

[3] In his first post-conviction appeal, Petitioner raised the following issues: (1) (IAC) for failure to object to consolidation of cases; (2) IAC for failure to request a jury instruction regarding use of Williams Rule evidence; (3) IAC for failure to present testimony of several witnesses; (4) IAC for failure to adequately prepare for trial; (5) IAC for failure to adequately argue for a judgment of acquittal on Count 2; (6) IAC for failure to object to witness's use of documents; (7) IAC for failure to object to testimony stipulated to be inadmissible; and (8) cumulative error. Ex. PP.

An evidentiary hearing was held on the consolidation claim on November 16, 2015.  Ex. DDD at 2347-2403.  The post-conviction court denied the claim on February 1, 2016.  Ex. ZZ at 1555-1600; Ex. AAA at 1601-1623.  Petitioner appealed, and the state district court of appeal affirmed per curiam without discussion on January 31, 2017.[4]  Ex. HHH. Alford v. State, 222 So. 3d 1202 (Fla. 1st DCA 2017) (table).  The mandate was issued on March 23, 2017.  Ex. JJJ.

On May 18, 2017, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising the following grounds for relief:

> (1) Defense counsel rendered ineffective assistance by failing to object to or advise of the risks associated with consolidation of the cases.  ECF No. 1 at 3.
>
> (2) Defense counsel rendered ineffective assistance by failing to request a jury instruction concerning use of Williams Rule evidence by the jury.  ECF No. 1 at 7.
>
> (3) Defense counsel rendered ineffective assistance by failing to present testimony of two critical witnesses.  ECF No. 1 at 8.
>
> (4) Defense counsel rendered ineffective assistance by failing to adequately prepare for trial.  ECF No. 1 at 12.
>
> (5) Defense counsel rendered ineffective assistance by failing to adequately argue for judgment of acquittal. ECF No. 1 at 16.

---

[4] In this second post-conviction appeal, Petitioner alleged the post-conviction court erred in denying, after hearing, his motion alleging trial counsel was ineffective for moving to consolidate the cases for trial without properly advising Petitioner of the risks association with consolidation.  Ex. EEE.

(6) Defense counsel rendered ineffective assistance by failing to object to witness's use of documents on the witness stand.  ECF No. 1 at 17.

(7) Defense counsel rendered ineffective assistance by failing to object to testimony that counsel agreed would not be admitted.  ECF No. 1 at 19.

(8) Cumulative error denied Petitioner a fair trial.  ECF No. 1 at 20.

(9) Fundamental error occurred during closing argument when the prosecutor argued that the foremost duty of the jury system is to hold guilty people accountable, and that the jury should hold Petitioner accountable.  ECF No. 1 at 21.

(10) Petitioner was denied due process and a fair trial because he was convicted and sentenced pursuant to a statutory subsection that did not exist at the time of the alleged offense.  ECF No. 1 at 23.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against

extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

   "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v.

Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.* at 845.

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second,

the defendant must show that the deficient performance
prejudiced the defense.  This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' " <u>Knowles v.</u>
<u>Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550
U.S. 465, 473 (2007)).  "And, because the <u>Strickland</u> standard is a general
standard, a state court has even more latitude to reasonably determine that
a defendant has not satisfied that standard." <u>Mirzayance</u>, 556 U.S. at 123.
It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim
evaluated under the § 2254(d)(1) standard." *Id.*  Both deficiency and
prejudice must be shown to demonstrate a violation of the Sixth
Amendment.  Thus, the court need not address both prongs if the petitioner
fails to prove one of the prongs.  <u>Strickland</u>, 466 U.S. at 697.

### <u>Ground 1:</u> Failure to Advise on Decision to Consolidate for Trial

Petitioner contends that defense counsel rendered ineffective
assistance by failing to object to or advise of the risks associated with
consolidation of the cases.  ECF No. 1 at 3.  He raised this issue in the
post-conviction court and, after an appeal and reversal of summary denial
on this issue, he was granted an evidentiary hearing.  The post-conviction
court denied the claim after the hearing, finding that trial counsel
contradicted Petitioner and his testimony was credible.  Ex. ZZ at 1555.
The court concluded:

Additionally, this Court finds that the attorneys for
Defendant discussed with him the critical issue of consolidation

and explained to him issues relating thereto, including the giving of a cautionary instruction to the jury in the event of two trials. Further this Court finds that the particular trial strategy developed by [trial counsel], with the concurrence and active participation by the Defendant, was a reasonable trial strategy given the particular set of facts before them. The fact that the outcome was not what the Defendant wanted does not make the strategy equate to ineffective assistance of counsel.

. . . .

This Court, therefore, finds that the record clearly establishes the Defendant's active involvement in developing his trial strategy; his having been actively involved in the decision to agree to consolidation of the cases against him; and his having been advised by his attorneys about the disadvantages and advantages involved in consolidation. The Court also finds that [the] motion in this case should be denied "because of the strong presumption that a tactical decision of the sort made by his counsel (and approved by [the defendant] himself during the proceedings . . .) falls within the broad range of professional judgments made by defense counsel preparing for trial, Hanna v. State, 970 So. 2d 385, 386 (Fla. 3d DCA 2007).

Ex. ZZ at 1157.

Before the decision to consolidate the cases for trial, the trial court

had granted in part a motion regarding Williams Rule[5] evidence, ruling that

---

[5] Williams v. State, 110 So. 2d 654 (Fla. 1959). The "Williams rule" is codified at section 90.404(2), Florida Statutes (2005). This rule allows introduction of similar fact evidence of other crimes or acts by the defendant that are relevant to prove a material matter in the prosecution. Section 90.404(2)(b)1 provides that evidence of the defendant's commission of other acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. The court must engage in a review, however, to determine if the probative value of the evidence of prior molestations is substantially outweighed by the danger of unfair prejudice. McLean v. State, 934 So. 2d 1248, 1261-62 (Fla. 2006).

it would likely admit similar fact evidence of acts committed against victim

E.F. into evidence in the case regarding her sister, D.F., but would likely

restrict the more voluminous evidence of similar acts committed against

D.F. in a separate trial of E.F.  Ex. K at 3-5.  After this ruling, trial counsel

met with Petitioner to discuss the ruling and the issue of consolidation.

After the discussion with Petitioner, and with Petitioner present, trial

counsel announced to the trial court: "We might do this again Monday at

the jury selection, but we have spoken to Mr. Alford about trying these

cases together, and he agrees that he would like to consolidate them and

try both cases together."  The judge asked Petitioner if that was correct,

and he answered in the affirmative.  Ex. K at 6.

When the post-conviction evidentiary hearing was held on this issue,

Petitioner testified that counsel only had one brief conversation with him

about consolidation and that he was never advised of the advantages or

disadvantages of one trial versus two.  Ex. DDD at 2380-87.  Trial counsel

testified, however, that he talked with Petitioner about the meaning of the

court's ruling on the Williams Rule issue, and Petitioner "was pretty

adamant that he wanted to have one trial."  Ex. DDD at 2354.  Counsel

testified, "My feeling on it was that they're difficult cases and that it wasn't

going to change our defense at all whether we had one or two." *Id.* He

further explained:

> And if we had two trials he was likely going to have to testify,
> and if he testified in the first trial regardless of what happened
> in the second trial, then obviously the state would be able to,
> you know, they would have had his testimony already in the first
> case.  And so we, I had not discussed it with [co-counsel], I
> discussed it with Mr. Alford, and I know after the Judge made
> his ruling on the record, then I think we discussed it some more
> outside the court room, and we came back and agreed to
> consolidate it.
>
> Q. Okay. And in making that decision, did you counsel Mr.
> Alford regarding the risks of that type of decision?
>
> A. Yes, we talked about the Williams Rule evidence and
> what the, what that meant and what it could be used for in the
> case.  And I mean, I think both cases contained life felonies so,
> you know, if he was convicted on either one it was, it was a life
> felony.  But we certainly, we certainly discussed, yes, we
> discussed the implications of separate trials versus having one
> trial, yes, ma'am.

Ex. DDD at 2354-55.  Counsel testified that he spoke to Petitioner about

the issue of two trials versus one trial "sort of off and on throughout, you

know, while discovery was going on and what, what to do." *Id.* at 2356.  He

explained more of his strategic considerations, as follows:

> I felt like it made sense to have one trial.  I did, because we
> were obviously saying the mother had put the girls up to this,
> because she was being accused or going to be accused of
> child abuse, and so she was left overnight with them and that
> that's, you know, when law enforcement got back involved, then
> that's when the girls made the allegations.  And so that wouldn't
> change whether you had one or two trials, but I think it would
> give the State the opportunity to prepare for whatever mistakes

they made in the first case, whether you were successful or not successful.

Ex. DDD at 2357.

Defense co-counsel also testified at the evidentiary hearing, in

pertinent part, as follows:

> Q.  At some point you decided, along with [counsel] and Mr. Alford, to consolidate the cases; is that correct?
>
> A.  True, yes.
>
> Q.  And can you tell me what considerations brought you to that decision?
>
> A.  Well, I guess there were several, one of which is that it's very difficult to win one of these cases.  It's virtually impossible, in my view, to win two, and I felt like by having one trial we gave Mr. Alford the best chance of winning the case. Both of the cases were life felonies potentially, and if we lost either one of the cases, then we, in essence, had lost the case. . . .  And so we felt that the best shot that Mr. Alford had of winning the case was to consolidate them and try them all at one time and - -  because otherwise, if you took it and you had two cases, he was going to have to convince a jury twice that he was not guilty.

Ex. DDD at 2370.  He also testified that counsel had talked to Petitioner

"many times" about the consolidation issue, although highlighting the

advantages of the consolidation rather that the risks of consolidation.  Ex.

DD at 2373.  The post-conviction court denied the claim, Ex. ZZ at 1555-

57, and the State district court of appeal affirmed per curiam without

discussion.  Ex. HHH.

Based on the testimony presented at the evidentiary hearing, the state court found that Petitioner's trial counsel did advise him about the issue of consolidation and that he affirmatively wanted a consolidated trial. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). The Court in Consalvo explained:

> Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See* Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Id.* at 845. Petitioner has not overcome the presumption of correctness by clear and convincing evidence. Further, Petitioner has not overcome the presumption, and the testimony at the evidentiary hearing, that trial counsel had a sound strategic reason for recommending that the two cases be consolidated.

In light of the evidence in the record, the State court reasonably concluded that defense counsel were not ineffective in regard to the issue

of consolidation of the two cases for trial.  Petitioner has not demonstrated that this adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  Habeas relief should be denied.

### Ground 2: Failure to Request Jury Instruction on Williams Rule

In this claim, Petitioner contends that defense counsel rendered ineffective assistance by failing to request a jury instruction concerning use of Williams Rule evidence by the jury.  ECF No. 1 at 7.  He argues that the jury should have been given an instruction stating that similar fact evidence cannot be used to show propensity to commit the alleged crime.  *Id.*  He contends that at the beginning of the consolidated trial, the judge asked if there was any Williams Rule issue, and defense counsel responded there was not, although the prosecutor responded that a limiting instruction was still necessary.  *Id.* at 8.

This claim was raised in Petitioner's Rule 3.850 motion and summarily denied, finding Petitioner did not demonstrate any deficient performance by counsel.  Ex. U at 545.  The post-conviction court cited the transcript colloquy concerning whether any Williams Rule instruction was

necessary, and the fact that the trial court specifically denied the giving of a

Williams Rule instructions.  *Id.*  Petitioner appealed the denial of relief, and

the State appellate court affirmed per curiam without discussion.

Prior to commencement of trial, the following discussion occurred:

> **MR. WILSON** [prosecutor]:  Yes, sir, I have two more things.  First is, your Honor, on the Williams' Rule issue - - told the state to proffer before I intended to introduce that testimony, however, judge, we're trying both cases here.  I intend to call [D.F.] first, the girl with the most counts, and then [E.F.], the one with two counts.  How would your Honor suggest we proceed as far as the Williams' Rule issue[?]

> **THE COURT**:  There is no Williams Rule issue with respect to acts committed - - that are named in the [I]nformation and both of these cases are being tried together.  You're entitled to put on this evidence as to counts one and two in, [case number] 192, and counts one through five in [case number] 191.  Since these cases are being tried together, that's not an issue that I'm aware of, is it, counsel?

> [**DEFENSE COUNSEL**]: No, sir.

> **MR. WILSON**:  Yes, sir, actually the law would allow them still to consider the acts against [E.F.] in [D.F.'s] case.

> **THE COURT**: When we get to the jury instructions with respect to the effect of this testimony, the cases are being tried together, but the evidence as to one will be considered separately except that they may consider this for corroboration purposes?

> **MR. WILSON**:  I think we're on the same page.  I don't think we need a warning, what you typically read to them before Williams' Rule evidence comes in, in the trial; however, in the final case, that's what my notice encompasses, I intend for them to use the acts on one against the other with the restrictive nature that you told us last Wednesday.

Ex. D (June 19, 2008, transcript) at 17-18.  The trial court then asked

defense counsel for a response, and he responded, "Can we address that

issue when we get to it?"  *Id.* at 18.  The Court then stated, "I think so,

unless somebody requests a - -  they're going to hear the evidence and

they're going to consider it with respect to each case separately. . . ."  *Id.*

At the conference on jury instructions, when the Williams Rule issue

was discussed again, the prosecutor announced that he filed a timely

Williams Rule notice and sought a Williams Rule instruction because he

wanted to argue to the jury that the counts where E.F. was involved can be

used to corroborate the testimony of D.F.  Ex. g at 5-6.  The judge denied

that he had ruled that evidence introduced concerning acts against E.F.

could be used as Williams Rule collateral evidence in support of the

allegation of acts against D.F.  Ex. G. at 7.  The trial judge said because

the cases were tried together, he did not know of any instruction that would

be appropriate.  *Id.* at 8.  He stated, "I'm not going to instruct the jury that

they are to consider evidence for one purpose or another.  The Williams

Rule evidence is to ensure, as I understand it, is that the jury, they have

heard evidence and they can only use it for a limited purpose.  [T]hat's not

the case here. These cases are being tried together and they're to consider

all the evidence in determining their verdict."  *Id.* at 8-9.

The post-conviction court denied the claim on the basis that no deficiency was shown, stating, "The record reflects that the Court clearly did not even think there was a Williams rule issue with the cases being tried together.  The Williams Rule instruction was discussed and the Court specifically denied any Williams rule instruction on the record."  Ex. U at 545.  The denial of post-conviction relief on this case was appealed, and affirmed per curiam by the State appellate court.  Because any request by defense counsel for a Williams Rule instruction would have been futile, in light of the trial court's ruling on the State's request for such an instruction, counsel has not been shown to have been deficient in failing to request the instruction.  *See* Knowles v. Mirzayance, 556 U.S. 111, 127 (2009) (the law does not require counsel to raise weak or nonmeritorious claims); Rasheed v. Smith, 221 F. App'x 832, 836 (11th Cir. 2007) (unpublished) (counsel not deficient for failing to file a futile motion); Gordon v. State, 863 So. 2d 1215, 1219 (Fla. 2003) (reiterating that counsel cannot be deficient for failing to file a futile motion); Robinson v. State, 913 So. 2d 514, 523 (Fla. 2005) (same).

Moreover, during closing argument, the prosecutor did not argue, as he would have if a Williams Rule instruction had been given, that the evidence and testimony pertaining to one victim could be considered to

corroborate the evidence and testimony pertaining to the other victim.  *See* Ex. G at 94-133.  This argument, had it been made, would not have been favorable to the defense.

For all these reasons, the state court adjudication of this claim has not been shown to have resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d). Habeas relief on Ground 2 should be denied.

### <u>Ground 3:</u> Failure to Present Certain Evidence

Petitioner contends that defense counsel rendered ineffective assistance by failing to present testimony of two critical witnesses.  ECF No. 1 at 8.  He claims that he informed defense counsel that he wanted George Pelt to testify and Pelt was placed on the witness list but was not called to testify at trial.  *Id.* at 9.  He contended in his Rule 3.850 motion, in his amended claim pertaining to this issue, as he does here, that Pelt would have testified that the home where the victims lived was a "party house" with various people going in and out, which would have contradicted the

testimony of the mother of the victims that she never partied.[6]  Ex. U. at

530.  He argues that Pelt's testimony would also have testified that

Petitioner was not in the home during the time period that the sexual abuse

was alleged to have occurred.  *Id.*

The post-conviction court denied the claim without a hearing, stating:

> Even if this witness testified as Defendant alleges it is not clear
> what this witness would have added to defendant's case to
> affect the outcome of the trial.  Even if the house was not a
> "party house" it does not mean that these crimes did not occur
> or that the victims would not be able to identify the Defendant
> as the perpetrator.  It is not as if this was a one time offense.
> There were several counts and the offenses occurred over
> several years.  [The mother] and Defendant dated for several
> years so it is not as if the perpetrator was a stranger or the
> vicitms would not be able to identify Defendant or confuse him
> with someone else.  Defendant does not alleged how the
> witness would demonstrate that Defendant was not in the home
> or which home or when and it is not clear how any one witness
> would be able to testify Defendant was not around these
> children over the course of the entire time period of these
> offenses given the evidence set forth at trial.  Defendant was in
> the community the whole time [ ] but moved locations from time
> (sic) and that does not disprove these offenses.  Defendant has
> not demonstrated deficient performance by counsel as to this
> ground or resulting prejudice.  Accordingly, the Defendant's
> ground is denied in part at to witness George Pelt.

---

[6] In his Rule 3.850 motion, Petitioner did not cite any trial testimony by the
victim's mother that she never partied, and a review of her trial testimony does not
disclose any reference to whether she partied.  *See* Ex. KK at 96-131.

Ex. U at 545.  The State appellate court affirmed denial of relief without discussion.  Petitioner has not shown that this ruling was unreasonable in light of the evidence in the record.

Petitioner also contends in this claim, as he did in the state courts, that defense counsel rendered ineffective assistance by failing to call Cherie Hires to testify that victim E.F. told her that her mother made her bring allegations against Petitioner, which supported the defense theory that the victims' mother did so in revenge against Petitioner for terminating their relationship.  ECF No. 1 at 9; Ex. U at 514.  The post-conviction court granted an evidentiary hearing on this portion of Defendant's claim.  Ex. U at 545; Ex. OO.

At the hearing held on November 18, 2013, Cherie Hires testified that she dated the Petitioner's son Matthew for several years while in high school and had met Petitioner during that time.  Ex. OO at 16.  She went to school with E.F. and D.F. as well.  When asked if E.F. ever made any statement to her about the issue of abuse, Hires testified, in pertinent part, as follows:

> A.  The only statement that [E.F.] ever made to me, we were headed home from a volleyball game when all this was going on, and Matthew had come to the volleyball game to watch me.  It was over in Bozeman, I remember it very vividly. And [E.F.] tried to speak to him after the volleyball game and he just turned his back.  When we got on the bus, [E.F.] sat down

> in the seat beside me and she said, Matthew wouldn't speak to
> me, and she was upset about it.  And she said, why not, and I
> said, well, probably what's going on, [E.F.].  He is probably
> upset.  And she said, well, does he believe me?  And I said,
> [E.F.], you know, no.  And she said, well, do you?  And I just
> kind of shook my head at her and she laid down in the seat and
> started crying and said, well, listen, this is not our fault.  This
> was our mom.  Our mom made us do this.  And I did not push it
> any further, I did not ask anything else, she just said that it
> wasn't their fault, that it was their mom. . . .  She just kept
> screaming and crying, saying it was her mom.  It was her
> mom's idea, it was not them.

Ex. OO at 17-18.  Hires testified she later told Matthew about the

conversation, although they were no longer dating at the time.

Defense counsel testified at the hearing that the main theory of

defense at trial was that the victims' mother put them up to making the

allegations.  Ex. OO at 29.  He testified he received a copy of an email

Matthew Alford had received from Hires prior to trial in which Hires related

that she had a short conversation with E.F. in which E.F. purportedly stated

"well my mom is the one who brought all of this up, not us."  *Id.* at 22, 30;

Ex. X at 1022.  Defense counsel said when he saw this email account of

the statement by E.F., he considered it but did not go any further with it

because it did not seem helpful.  *Id.* at 30-31.  He explained that the email

did not indicate E.F. stated her mother was lying and making the children

lie, it just said the mother was the one "who brought this up."  *Id.* at 31.  He

testified, "And what I took that to mean was she, the mom was the one who

told the police about it and brought it to light, brought the allegations to light. That's how I interpreted the email." *Id.* He noted that Hires had placed those words in quotation marks and he assumed that represented E.F.'s actual words.[7] *Id.* at 30. Defense counsel also testified that Matthew Alford met with him several times but never brought up the Hires email. Ex. OO at 32. He said the defense had other evidence concerning a possible child abuse claim that the mother had battered one of the victims, which defense counsel believed provided stronger evidence that the victim's mother had reason to push the allegations against Petitioner to take the focus off herself. *Id.* at 29.

The post-conviction court denied the Hires claim, concluding:

> Reviewing trial counsel's decisions made during his defense of this matter in light of the testimony and evidence he had at the time, this Court determines that trial counsel's decision to not pursue Cheree [sic] Hires e-mail does not support Defendant's ineffective assistance of counsel claim. The quote from [E.F.] as provided by Ms. Hires does not establish any further credence to Defendant's theory of defense than that originally argued at trial by trial counsel. Additionally, trial counsel's concern over what Ms. Hires might say if called to testify seems to have been justified by the testimony she gave at the evidentiary hearing which she acknowledged was different in tone than the conversation as related in her e-mail years earlier.

---

[7] Hires testified at the hearing that she did not mean for the quotation marks in the email to indicate verbatim statements. Ex. OO at 22, 24.

Ex. X at 1005.  Petitioner appealed denial of this claim to the State

appellate court, which affirmed without discussion.

To establish ineffective assistance of counsel, a Defendant must

prove both deficiency and prejudice.  Strickland, 466 U.S. at 697.  Even if

trial counsel should have further investigated the testimony that could have

been provided by Pelt and Hires, Petitioner has failed to show that the

alleged deficiency resulted in prejudice.  Petitioner must show that

presentation of Pelt and Hires would have created a reasonable

probability—one being sufficient to undermine confidence in the result—to

meet the requirements of the prejudice prong of Strickland.  As noted

earlier, "[t]he question 'is not whether a federal court believes the state

court's determination' under the Strickland standard 'was incorrect but

whether that determination was unreasonable—a substantially higher

threshold.' "  Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at

473).  "And, because the Strickland standard is a general standard, a state

court has even more latitude to reasonably determine that a defendant has

not satisfied that standard."  Mirzayance, 556 U.S. at 123.

"The pivotal question is whether the state court's application of the

Strickland standard was unreasonable.  This is different from asking

whether defense counsel's performance fell below Strickland's standard.

Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States District Court." Richter, 562 U.S. at 101. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

In light of the evidence presented at trial by the two victims identifying Petitioner as the person who sexually battered and molested them, and in light of the fact that the jury was not persuaded by evidence and argument that the victims were lying about Petitioner because their mother sought vengeance against Petitioner or because she might be investigated for child abuse, the State courts' adjudication that counsel was not ineffective for failing to present evidence of Pelt and Hires to support the defense theory was not unreasonable. Habeas relief on this claim should be denied.

## Ground 4: Trial Preparation

In this claim, Petitioner contends that his trial counsel rendered ineffective assistance by failing to adequately prepare for trial. ECF No. 1 at 12. He claims that trial counsel should have (1) presented cell phone records to show the victims' mother called Petitioner's number numerous

times, including times the calls were not answered; (2) presented electric bills, school records, and court records to show Petitioner was not in the victims' home at the time of the offenses; and (3) presented court records to show he did not live at Sutton Creek Apartment until June 1994.[8]  ECF No. 1 at 13-14.

In his Rule 3.850 motion in State court, Petitioner argued that his counsel was ineffective for failing to obtain and present telephone records to show repeated calls to Petitioner's cell phone from the victims' mother even when those calls were not answered.  Ex. U at 516.  He argued, "Had defense counsel contacted the phone company he would have been able to obtain such records."[9]  *Id.*  The post-conviction court denied the claim, finding that the record showed both the defense and the State had the cell phone records, "but they were not helpful."  Ex. U at 546.  *See* Ex. W at

---

[8] In the State courts, Petitioner also alleged counsel was ineffective in failing to present handwritten letters written by the victims' mother to Petitioner.  *See* Ex. U at 516.  An evidentiary hearing was granted on that aspect of the claim and the post-conviction court's order denying relief also addressed that issue.  Ex. X at 1055.  Petitioner does not address the handwritten letters in his § 2254 petition and, thus, they will not be addressed here.

[9] In a supplemental filing in state court, filed after the post-conviction court denied the allegations in claim 4 except those concerning handwritten letters from the victims' mother, Petitioner clarified that counsel did have the complete cell phone records but failed to submit them in the trial.  Ex. W at 957-58.  In accord with the order of January 28, 2013, setting a partial evidentiary hearing that did not include the cell phone record issue, the issue of cell phone records was not heard in the subsequent evidentiary hearing held November 18, 2013, and was not addressed in the second order denying relief issued on December 10, 2013.  *See* Ex. X.

972-73.  The court also noted that Petitioner and his girlfriend at the time,

Sharon Vaughn, testified at trial that the victims' mother called both

Petitioner's house telephone and cell phone several times.  *Id.*  The post-

conviction court concluded, "The Defendant has not demonstrated deficient

performance by counsel as to this allegation or resulting prejudice."  Ex. U

at 546.

> In this Court, Petitioner contends:
>
> Defense counsel issued a subpoena to [S]print and received
> records that contained all the calls—even those not answered.
> Although Defense Counsel had the phone records that
> substantiated Petitioner Alford's testimony—that [the victims'
> mother] repeatedly called—he did not realize he had them and
> thus failed to enter these records into evidence. . . .  Defense
> counsel had the supporting records all along.

ECF No. 1 at 13-14.  Petitioner maintains that the records would have

made more credible the defense theory that the victims' mother had her

daughters make up false charges against Petitioner because she was

furious that Petitioner had a new girlfriend.  *Id.* at 14.

The State court's finding that Petitioner failed to demonstrate deficient

performance or prejudice was not unreasonable.  Sharon Vaughn,

Petitioner's girlfriend at the time, was called by the defense at trial and

testified that the victims' mother called Petitioner's cell phone five or six

times on one day in July.  Ex. KK at 187, 192.  She testified that he ignored

some of the calls, but did answer one of her calls on his house telephone and let Vaughn hear part of the conversation.  She testified the victims' mother asked him to get together with her and when he refused, she said, "I know about your little girlfriend."  *Id.* at 188.  Shortly after that call, Vaughn testified, D.F. came to Petitioner's house and told her "I just wanted to let you know your boyfriend is a child molester."  *Id.* at 189. Vaughn said D.F. gave a "little smirk with a cocky smile" and left.  *Id.* at 190.

Petitioner testified at trial that after he had broken up with the victims' mother, she did not call for a while but began calling in July 2007.  Ex. LL at 34.  He estimated she called about six times on the cell phone and several times on the house phone.  *Id.*  Petitioner testified he received no further calls from the victims' mother and was arrested in early August 2007.  Ex. LL at 39.

Petitioner has not demonstrated how the telephone records would have added any credibility to the evidence that the victims' mother called him numerous times on July 7.  There is no indication that the testimony about the calls needed any further bolstering.  Moreover, in light of the evidence presented by the two victims concerning the abuse by Petitioner, he has not demonstrated that, but for the alleged error of counsel in failing

to present the telephone records, there is a reasonable probability of a different result, that is, one sufficient undermine confidence in the result of the trial.

In this ground, Petitioner also contends that trial counsel should have obtained and presented electric bills and school records to show Petitioner was not in the victims' home during the pertinent time periods.[10]  *Id.*  The postconviction court concluded that the allegations about electric bills and school records were conclusory—Petitioner did not identify what bills and what records, and he failed to state how they would have shown Petitioner was not "in the home during the subject periods" as he alleged in his motion.  Ex. U at 546.

At trial, the victims' mother testified that Petitioner moved next door to her in the Sutton Creek Apartments in December of 1993 and they began dating in January 1994.[11]  Ex. KK at 98.  She said he sometimes babysat her daughters.  *Id.* at 99.  After he moved out, he came back and stayed with her for a time; and later, in 1998, she and her daughters lived with him

---

[10] He also argues here that defense counsel should have obtained and presented "court records" to help prove that Petitioner did not live at Sutton Creek Apartment before June of 1994.  ECF No. 1 at 14, 16.  However, he does not specify what "court records" he refers to, and he did not raise this same allegation in the State courts.

[11] Petitioner testified at trial that he did not move into the Sutton Creek Apartments until the middle of 1994 and did not start dating the victims' mother until March 1995.  Ex. LL at 24-26.

at several other addresses for several years. *Id.* at 100-01. She testified

she moved back to Sutton Creek Apartments and lived there from 1999

until 2002. *Id.* at 102-03. She and her daughter moved into a house,

where they continued to live, and Petitioner lived there with them from 2004

until April of 2005. *Id.* at 104. She said after they broke up, she maintained

a relationship with Petitioner's family. *Id.* at 105. She testified that she

called Petitioner on July 7, 2007, because her daughter, D.F., wanted to go

there and confront his current girlfriend and tell her he was a child molester.

*Id.* at 106. She testified that her daughters had told her in December of

2006 that Petitioner had "messed" with them. *Id.* at 107.

D.F. testified that when she was "three or four," after Petitioner had

moved next door to their apartment and was babysitting them, she woke up

with Petitioner's mouth on her genitals. Ex. KK at 38-39, 92. She testified

that not long after that incident, just a few months, while in their same

apartment, Petitioner put his hand on her genitals and touched her chest.

*Id.* at 41. She did not recall if she had reached age six at that time. *Id.*

D.F. testified that when she was in third grade, and they lived in a house off

Hentz Avenue with Petitioner's family, Petitioner came into her room and

put his finger in her vagina. *Id.* at 44. D.F. testified that when she was age

10 or 11, Petitioner lived in a trailer where she sometimes stayed when he

babysat her and her sister.  D.F. testified that while there, she woke up

once with his penis on her mouth.  *Id.* at 47-48.  She testified that when she

was 14 or 15, and Petitioner was no longer living with them, he put his

hand in her underwear, or tried to, and touched her chest, but she fought

him and he stopped.  *Id.* at 53, 83.

E.F. testified that when she was around 4 or 5 years old, which would

have been in 1996 or 1997, Petitioner came into her room when she was in

bed and put his finger in her vagina.  Ex. KK at 137.  She testified that

when she was 8 or 9, in third grade, Petitioner put his hand on her vagina

when she was in bed.  *Id.* at 138-39.

The State court concluded that the school records and electric bills

could not have disproved the allegations or changed the outcome of the

trial.  *Id.*  For this reason, the court found that Petitioner failed to

demonstrate deficient performance or prejudice.  The district court of

appeal affirmed denial of this claim without explanation.  Ex. RR.  This

adjudication was not unreasonable in light of the State court record.

As noted above, the issue is not whether the conclusion of the

postconviction court was correct, but whether in light of the record, was

unreasonable.  Petitioner has not shown that the adjudication of the State

courts was contrary to, or involved an unreasonable application of, clearly

established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).  Habeas relief on Ground 4 should be denied.

### Ground 5: Motion for Judgment of Acquittal

Petitioner argues here that defense counsel rendered ineffective assistance by failing to adequately argue for judgment of acquittal. ECF No. 1 at 16.  He contends that trial counsel failed to be specific in arguing the motion for judgment of acquittal in that he failed to point out the deficiencies in the evidence as to the dates of the incidents of lewd or lascivious conduct alleged in Count 2 of the charges involving D.F.  *Id.* at 17.

This claim was raised in State court and the post-conviction court held that the motion, even if made more specific, would not have been successful because there was sufficient evidence in the record for the jury to find that the incident in Count II in case 2007-191 happened within the time frame alleged.  Ex. U at 547.  The court noted that D.F. testified the first incident happened when she was three or four and that he performed the acts alleged in Count 2 not long thereafter.  *Id.*  The appellate court affirmed denial of this claim without explanation.

In ruling on a motion for judgment of acquittal, the court will consider all the evidence and reasonable conclusions and inferences therefrom in a

light most favorable to the State. <u>Lynch v. State</u>, 293 So. 2d 44, 45 (Fla. 1974). The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal. *Id.* "Courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." <u>Davis v. State</u>, 207 So. 3d 177, 195 (Fla. 2016) (quoting <u>Lynch</u>, 293 So. 2d at 45).

Under that test, even if trial counsel had been more specific in his motion for judgment of acquittal, there is no reasonable probability that the motion would have been granted based on the evidence presented during D.F.'s testimony. D.F. testified that the second incident occurred in the same apartment several months after the first. Ex. KK at 37. She could not recall if she had reached age six. Ex. KK at 41. Based on D.F.'s birthday of October 4, 1989, which she testified to at trial, Ex. KK at 34, she would have turned age four in October of 1993 and age five in 1994. Ex. KK at 36. Count II alleged that the acts on D.F. were performed between December 1993 and October 3, 1995. Ex. B at 403. There is no reasonable probability that the trial court would have granted a motion for judgment of acquittal on Count 2 in light of this evidence.

Petitioner has not demonstrated that the adjudication of the State

courts was unreasonable or contrary to any federal law.  Habeas relief on

this claim should be denied.

### Ground 6: **Witnesses' Use of Documents**

Petitioner contends that trial counsel rendered ineffective assistance

by failing to object to witnesses' use of documents on the witness stand.

ECF No. 1 at 17.  He claims that counsel should have objected to the use

by victims D.F. and E.F., and their mother, of documents during their

testimony.  *Id.* at 18.  He contends that the victims' mother wrote the seven

pages of notes that D.F. and E.F. used to testify.  *Id.* at 19.  In his Rule

3.850 motion in the State court, Petitioner stated that during trial, defense

counsel asked D.F. what the notes were that she had before her while

testifying, and D.F. answered that it was a time sheet she and her mother

prepared to help her figure out how old she was in each grade.  Ex. U at

521.  He contended that D.F. also had with her at trial a copy of the State's

statement of particulars that someone else had highlighted.  *Id.*

The post-conviction court denied the claim, noting that Petitioner did

not cite any rule or law that would prohibit the witnesses from using notes

while testifying and that section 90.613, Florida Statutes, states that when a

witness uses a writing to refresh their memory, the adverse party is entitled

to inspect it and cross-examine the witness about it.  Ex. U. at 547.  The post-conviction court found that defense counsel examined the documents and cross-examined the witness about it, and he attacked the witnesses' credibility based on use of the notes.  *Id.*  The court also found that the jury was apprised of the source of the notes.  *Id.*  The State court found no deficiency or prejudice had been shown.  Ex. U at 548.

In support of his claim, Petitioner cites the statement of the trial judge during trial that he was prepared to sustain an objection to the witnesses bringing documents to the witness stand, but no one objected.  ECF No. 1 at 18.  During cross-examination of Sharon Vaughn by the prosecutor, the judge sustained an objection by the defense to the witness testifying from telephone records not in evidence.  Ex. KKK at 193.  The prosecutor reminded the judge that he "allowed counsel to ask questions, numerous questions, based on statements and notes that my witness referred to."  Ex. KKK at 193-94.  The trial judge responded that the prosecutor had let the witness, who was D.F., refer to them and no one objected.  *Id.* at 194.  The judge then stated, "I was quite prepared to sustain the objections to these witnesses bringing documents to the witness stand and testifying from them, but nobody objected, so if y'all don't care, I certainly don't."  *Id.*  Notwithstanding the trial judge's statement that he was prepared to sustain

an objection, Petitioner did not cite any authority to the post-conviction

court or to this Court to show that use of notes during testimony was

improper.

The post-conviction court found no deficiency of counsel and the

State appellate court affirmed.  Even assuming that counsel should have

objected because, in hindsight, it appears the trial judge would have

sustained an objection, Petitioner did not meet the prejudice prong of

Strickland.  As the post-conviction court noted, defense counsel cross-

examined D.F. about the preparation of the notes, bringing out the fact that

her mother assisted her in preparation and that they had gone over the

notes prior to trial with the prosecutor.  *See* Ex. KK at 65-67.  Defense

counsel also cross-examined D.F. on the statement of particulars she had

with her on the witness stand.  Ex. KK at 71-73, 77.  The prosecutor

brought out during the testimony of E.F. that she had with her a list of

dates, which she agreed was made in an effort to remember where the

family was living at different times.  Ex. KK at 155.  Moreover, as the post-

conviction court noted, defense counsel used the reliance on the notes to

attack the credibility of the witnesses in his closing argument.  He stated:

> They had to be the most well prepared witnesses in history.
> They all came in here and you all saw these cheat sheets they
> got documents that they're holding while they're testifying from
> the stand.  You know that [D.F] and [the victims' mother] had it

> because I had to impeach them with the documents and had to refer them to it, and they still didn't get their story straight.
>
> What was really troubling about that, another example of what was going on here, Mr. Wilson elicited testimony from [D.F.] when she was testifying, what was the need for these documents, it was so we could all be on the same page, we all got to get our stories straight, we got to be on the same page.
>
> . . . .
>
> . . . . [T]hey can't get their story straight, and they've had plenty of time to work on it and they came in with notes, I mean, they brought notes to the trial to try to get their story straight. It still didn't work.

Ex. LL at 107-08, 125. As the post-conviction court found, defense counsel was able to use the fact of witness notes in a manner favorable to the defense in attacking the credibility of the victims' testimony. Even if on objection to use of the notes had been made and sustained, it is mere conjecture to assume that the prosecutor would have been unable to elicit sufficient information from D.F. and E.F. concerning their ages and the general time periods when the alleged sexual conduct occurred.

Petitioner has not demonstrated that the adjudication of the State court that no prejudice has been shown, and thus no ineffective assistance of counsel had been proven, was unreasonable or contrary to federal law as determined by the Supreme Court. This ground should be denied.

## <u>Ground 7:</u> Inadmissible Testimony

Petitioner contends that defense counsel rendered ineffective assistance by failing to object to testimony that had been agreed would not be admitted.  ECF No. 1 at 19.  The testimony at issue was testimony by D.F. about multiple incidents of sexual abuse, rather than just on the counts charged.  ECF No. 1 at 20.  He argues, "Counsel allowed D. F. to testify as if it were a nightly occurrence."  *Id.*  He argued in his Rule 3.850 motion that prior to trial, the attorneys agreed that D.F. would testify only to the five incidents of abuse alleged in the Second Amended Information.  Ex. U at 548.  In his post-conviction motion, Petitioner complained that D.F. testified to incidents in general and not specific incidents, as agreed.  Specifically, Petitioner noted D.F. testified at one point that Petitioner "would come in the middle of the night and try and get inside my sleeping bag, and he would - - sometime he was able to get inside my underwear and he would touch my chest."  Ex. U at 548 (referring to D.F.'s testimony at Ex. KK at 48).  The post-conviction court noted that after this statement, the prosecutor attempted to have D.F. limit her testimony to a specific incident. The court also found, based on the record of the attorneys' discussion prior

to trial, that there was nothing agreed upon about not speaking in general terms.  Ex. U at 538-49.

In the discussion the court referred to, defense counsel stated that all counts are now single counts, so D.F. should not testify that his happened on more than five occasions alleged in the Second Amended Information. *Id.* at 548 (referring to Ex. KK at 15-16).  The prosecutor responded, "I intend to proceed on the counts the way I charged them, which are single counts, as long as you don't open the door."  Ex. KK at 16.  Petitioner has not identified any other examples of the witness testifying in general terms or to multiple instances of abuse that were not related to the specific counts identified in the Second Amended Complaint.  He claims this one instance of generalization by D.F. improperly bolstered her credibility.  ECF No. 1 at 20.

The post-conviction court denied this claim, stating "Defendant was charged with five different counts against this one victim so it is not as if the jury would have thought it only happened once if counsel had been able to see into the future and know what the witness was going to say and object prior to the testimony."  Ex. U at 549.  The court concluded that Petitioner had not demonstrated deficient representation by counsel or prejudice resulting from the failure to object.  The State appellate court affirmed.  This

adjudication has not been shown to be unreasonable in light of the

evidence in the record or contrary to any federal law.  Relief on Ground 7

should be denied.

### <u>Ground 8:</u> Cumulative Error

Petitioner contends that cumulative errors committed by defense

counsel denied him a fair trial.  ECF No. 1 at 20.  Petitioner raised a similar

claim in his amended motion for post-conviction relief, citing due process

and the Fourteenth Amendment, which was denied.  Ex. U at 525; Ex. X at

1006.  Although the Supreme Court has not directly addressed the

cumulative error doctrine in the context of an ineffective assistance of

counsel claim, it has held that "there is generally no basis for finding a Sixth

Amendment violation unless the accused can show how specific errors of

counsel undermined the reliability of the finding of guilt."  <u>Forrest v. Fla.

Dep't of Corr.</u>, 342 F. App'x 560, 564-65 (11th Cir. 2009) (unpublished)

(quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26 (1984)).

The Eleventh Circuit has rejected similar "cumulative error" claims

asserted in federal habeas actions. *See, e.g.,* <u>Insignares v. Sec'y, Fla.

Dep't of Corr.</u>, 755 F.3d 1273 (11th Cir. 2014).  The Court in <u>Insignares</u>

explained:

> Insignares claims cumulative error deprived him of a fair trial.
> Under the cumulative-error doctrine, a sufficient agglomeration

of otherwise harmless or nonreversible errors can warrant
reversal if their aggregate effect is to deprive the defendant of a
fair trial.  Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132
(11th Cir. 2012).  "This court has made clear that where '[t]here
[is] no error in any of the [trial] court's rulings, the argument that
cumulative trial error requires that this Court reverse [the
defendant's] convictions is without merit.' "  Id. (quoting United
States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) (per
curiam)) (alterations in original).  Because we have found no
error in the issues on appeal, Insignares has failed to show that
the state judge lacked a reasonable basis to deny his
cumulative-error claim.

Id. at 1284.  Even if petitioner's "cumulative error" claim was cognizable on

federal habeas review, the claim provides no basis for federal habeas relief

in this case.  The State appellate court summarily affirmed denial of the

claim.  Because neither the State courts nor this Court has found any error

in the issues raised in Grounds 1 through 7 above, Petitioner has not

shown that the State courts lacked a reasonable basis to deny his

cumulative effect claim.

Because each of the habeas claims fail, the cumulative error claim

must fail.  Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir.

2012) (assuming without deciding that a cumulative error claim is

cognizable, cumulative error claim must fail as none of Morris's individual

claims of error or prejudice have any merit, and therefore the Court has

nothing to accumulate).  See also Maynard v. Sec'y, Dep't of Corr., No. 16-

16040-C, 2017 WL 4457447, at *3 (11th Cir. May 30, 2017); Finch v. Sec'y,

Dep't of Corr., 643 F. App'x 848, 853 (11th Cir.) (unpublished), cert. denied,

Finch v. Jones, 137 S. Ct. 519 (2016); United States v. Gamory, 635 F.3d

480, 497 (11th Cir. 2011); Forrest, 342 F. App'x at 565 (unpublished).  For

the foregoing reasons, this cumulative error claim should be denied.

### Ground 9: Fundamental Error in Closing Argument

Petitioner asserts that fundamental error occurred during closing

argument when the prosecutor argued that the foremost duty of the jury

system is to hold guilty people accountable, and that the jury should hold

Petitioner accountable.  ECF No. 1 at 21.  He contends that arguments that

a jury "do its job" or "do its duty," or that it is the duty of the jury to find the

defendant guilty, have been held to be improper.  ECF No. 1 at 21-22.  He

also contends that the prosecutor's statement asking the jury to find

Petitioner guilty as charged and "to do otherwise would be a miscarriage of

justice" is improper and denied Petitioner a fair trial.  Petitioner's defense

counsel did not object to these arguments during closing.  This claim was

raised on direct appeal from Petitioner's conviction and sentence, and the

court affirmed without discussion.

Under Florida law, an error is fundamental if it "reaches down into the

validity of the trial itself to the extent that a verdict of guilty could not be

obtained without the assistance of the alleged error."  Williams v. State, 209

Case 5:17-cv-00144-MCR-MAF    Document 20    Filed 09/05/18    Page 47 of 53

Page **47** of **53**

So. 3d 543, 557-58 (Fla. 2017) (quoting Anderson v. State, 841 So. 2d 390, 403 (Fla. 2003)).  The Florida courts did not find fundamental error occurred in the prosecutor's comments in this case.  To obtain federal habeas relief on this same claim, the Petitioner must first show that the comments were improper and then that the comments rendered the trial fundamentally unfair.  *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991).  The United States Supreme Court has reiterated that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.' "  Darden v Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974).  Thus, assuming the prosecutor's comments were improper,[12] that is not enough to obtain federal habeas relief on a fundamental error claim unless the comments resulted in a denial of due process.  The Eleventh Circuit has also explained that prosecutorial misconduct in closing argument

---

[12] It has been held to be improper for a prosecutor to argue that the jury should do its job and that it is the duty of the jury to find the defendant guilty.  *See* United States v. Young, 470 U.S. 1, 17 (1985); United States v. Sanchez, 176 F.3d 1214, 1224 (9th Cir. 1999); United States v. Mandelbaum, 803 F.2d 42, 44 (1st Cir. 1988).  However, those cases were direct appeals not based on a violation of due process.

Case No. 5:17cr144-MCR/CAS

violates the Constitution if it is " 'so egregious as to create a reasonable probability that the outcome was changed.' " <u>Davis v. Zant</u>, 36 F.3d 1583, 1545 (11th Cir. 1994) (quoting <u>Brooks v. Kemp</u>, 762 F.2d 1383, 1403 (11th Cir. 1985) (en banc), *vacated on other grounds,* 478 U.S. 1016 (1986), *reinstated,* 809 F.2d 700 (11th Cir. 1987)).  These strenuous standards have not been met; thus, habeas relief is not warranted.

### <u>Ground 10:</u> Incorrect Statutory Section

In his last ground, Petitioner contends he was denied due process and a fair trial because he was convicted and sentenced pursuant to section 800.04(5), Florida Statutes, a statutory subsection that did not exist at the time of the alleged offense.  ECF No. 1 at 23.  He presented this claim in his direct appeal from his conviction and sentence.  Ex. O.  The State district court of appeal affirmed without discussion.  Ex. R.

The Respondent agrees that Count 2 in case number 2007-191, pertaining to victim D.F., charged Petitioner with lewd or lascivious touching of the breasts, genitals, or genital area, or the clothing covering them, and cited a statutory subsection that was not added until after the period of December 1993 and October 3,1995, the alleged offense dates for Count 2 in the Second Amended Information.  ECF No. 15 at 55.  Subsection (5)

was added in 1999 and specified the crime of "lewd or lascivious molestation."   *See* ch. 99-201, § 6, Laws of Florida.

The statute that was in effect during the dates alleged in Count 2 of the Second Amended Information provided that any person who "[h]andles, fondles or assaults any child under age 16 in a lewd, lascivious, or indecent manner. . . . without committing the crime of sexual battery, commits a felony of the second degree."   § 800.04(1), Fla. Stat.; ch. 93-4, Laws of Florida (eff. March 9, 1993).   Notwithstanding an incorrect citation to subsection (5), the conduct charged in Count 2—touching D.F.'s breasts, genitals, or genital area or the clothing covering them, in a lewd or lascivious manner—meets the required elements of section 800.04(1), Florida Statutes, as it existed at the time of the alleged offense.   Thus, the State did not charge a non-existent crime and Petitioner was not convicted of a non-existent crime.

Petitioner did not raise the issue of the incorrect subsection citation in Count 2 prior to trial.   Florida Rule of Criminal Procedure 3.140(o) provides now, and did so when the Second Amended Information was filed, that no indictment or information, or any count thereof, shall be dismissed or judgment arrested, or a new trial granted, on account of any defect in the form of the indictment or for any cause whatsoever, unless the court finds

the indictment or information so vague as to mislead or impair the accused in his defense or expose the accused to danger of a new prosecution for the same offense.  The allegations in Count 2 sufficiently apprised Petitioner of the proscribed conduct and did not impair him in his defense.

Moreover, in addition to Count 2 describing the conduct proscribed under section 800.04, Petitioner was provided a "Supplemental Statement of Particulars in Regards to Count II" in case number 2007-191.  Ex. B at 401.  That statement set forth the alleged dates, locations, and specifics of conduct charged in Count 2.  The State district court of appeal affirmed, thus indicating that under state law, the faulty subsection citation in Count 2 did not mislead or impair Petition in his defense.  Petitioner has shown no violation of due process.

Further, the adequacy of the information is primarily a question of state law.  *See* Johnson v. Trickey, 882 F.2d 316, 320 (8th Cir. 1989).  Questions of state law and procedure rarely raise issues of federal constitutional significance because a state's interpretation of its own laws does not involve a federal constitutional question, Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991), even where the issue is couched in terms of equal protection and due process or other constitutional provisions.  *See* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1998).  "It is not the

province of a federal habeas court to reexamine state-court determinations

on state-law questions." Estelle, 502 U.S. at 67; Carrizales v. Wainwright,

699 F.2d 1053, 1054-55 (11th Cir. 1983).  A claim grounded on issues of

state law provides no basis for federal habeas relief because a violation of

a state statute or rule of procedure is not, in itself, a violation of the federal

constitution.  Engle v. Isaac, 456 U.S. 107, 120-21 (1982).  For these

reasons, the claim that Count II of the Second Amended Information

regarding D.F. was fatally defective, or allowed conviction of a nonexistent

crime, is not cognizable in this proceeding.

For all the foregoing reasons, habeas relied on Ground 10 should be

denied.

## Conclusion

Based on the foregoing, Petitioner Sam Sterling Alford is not entitled

to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1)

should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still

be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining substantial showing) (citation omitted).

Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the

final order, the court may direct the parties to submit arguments on whether

a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and

Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 5, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon
all other parties. A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof. Fed.
R. Civ. P. 72(b)(2). Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control. If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**